637 S.E.2d 628

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**TOMMY Y., Jr., Defendant Below, Appellant.**

No. 33055.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 2006.

Decided Oct. 27, 2006.

532

Arthur Wayne King, Clay, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Robert D. Goldberg, Assistant Attorney General, Charleston, for Appellee.

DAVIS, Chief Justice:

Tommy Y., Jr., appellant/defendant below (hereinafter "Tommy"),[1] appeals an order of the Circuit Court of Clay County adjudicating him a juvenile delinquent for assaulting a school employee and brandishing a deadly weapon.[2] Tommy was placed in a secure juvenile facility for six months on the assault charge and for one year on the brandishing charge, with said placement to run consecutively.[3] Here, Tommy has assigned the fol-

---

1. Tommy was seventeen years old at the time of the delinquency acts involved in this proceeding. Consequently, "[w]e follow our past practice in juvenile ... cases ... and do not utilize the last name[ ] of the [juvenile]." *State ex rel. West Virginia Dep't of Human Servs. v. Cheryl M.*, 177 W.Va. 688, 689 n. 1, 356 S.E.2d 181, 182 n. 1 (1987) (citations omitted).

2. A " '[j]uvenile delinquent' means a juvenile who has been adjudicated as one who commits an act which would be a crime under state law or a municipal ordinance if committed by an adult[.]" W. Va.Code § 49–1–4(8) (1998) (Repl. Vol.2004).

3. A secure juvenile facility "means any public or private residential facility which includes construction fixtures designed to physically restrict the movements and activities of juveniles or other individuals held in lawful custody in such facility[.]" W. Va.Code § 49–1–4(12).

lowing as errors: (1) the failure of the trial court to dismiss the juvenile petition as defective; (2) the failure of the trial court to exclude two jurors for cause; and (3) the failure of the trial court to grant a mistrial because Tommy was brought to the courthouse dressed in institutional clothing and shackled. After a careful review of the record and briefs, and having listened to the arguments of the parties, we affirm.

## I.

### FACTUAL AND PROCEDURAL HISTORY

In the summer of 2004, Tommy's father informed him that the Clay County School Board intended to continue his placement at an Alternative Learning Center for an additional semester.[4] Tommy believed that the board's decision was based, in part, upon information obtained from James Haynie, the Assistant Principal of Clay County High School.[5]

On June 21, 2004, Mr. Haynie was driving home with his son when he noticed that he was being followed by someone in a truck. When Mr. Haynie pulled into his driveway, the truck followed him and stopped. Mr. Haynie got out of his vehicle and approached the truck. As Mr. Haynie approached the truck, he recognized the driver as Tommy. When Mr. Haynie reached the truck, he noticed Tommy cocking and uncocking a pistol. Mr. Haynie asked Tommy why he had the gun, and Tommy responded: "I's [sic] just thinking of wicked and evil things I was gonna do when, when I came out here[.]"[6]

Mr. Haynie talked with Tommy and tried to assure him that he was not responsible for his continued placement at the Alternative Learning Center. Eventually, Mr. Haynie stated to Tommy, "I'm going to the house, I have work to do, ... if you're gonna shoot me, shoot me, but, I'm going." Thereafter, Mr. Haynie proceeded to his home and reported the matter to the police.

On June 23, 2004, a delinquency petition was filed against Tommy. The petition charged Tommy with four acts of delinquency: (1) assault on a school employee, (2) brandishing a deadly weapon, (3) assault, and (4) reckless driving.[7] Tommy elected to have a jury trial. On September 23, 2004, the jury adjudicated Tommy delinquent for assaulting a school employee and brandishing a deadly weapon.[8] As a result of the initial sentencing order being in error and the withdrawal of appellate counsel on two occasions, the appeal in this matter was delayed. The circuit court entered a corrected sentencing order on May 21, 2005. Subsequently, Tommy filed this appeal.

## II.

### STANDARD OF REVIEW

This Court previously has held that "[a]n adjudication of delinquency is subject to the same standards of review on appeal as is an adult criminal conviction." Syl. pt. 1, *State v. Allah Jamaal W.,* 209 W.Va. 1, 543 S.E.2d 282 (2000). *See State v. William T.,* 175 W.Va. 736, 738, 338 S.E.2d 215, 218 (1985). The issues presented in this appeal involve the sufficiency of the delinquency petition, striking jurors for cause and a claim for mistrial. This Court has held that "[g]enerally, the sufficiency of an indictment is reviewed *de novo.*" Syl. pt. 2, in part, *State v. Miller,* 197 W.Va. 588, 476 S.E.2d 535 (1996). Further, "[w]e review the trial court's deci-

---

4. Tommy had been taken out of the traditional classroom setting because of disciplinary problems.

5. Tommy believed that Mr. Haynie informed the board of an earlier incident where Tommy "flipped him off" (flashed the middle finger).

6. During the delinquency proceeding, Tommy denied having a gun. However, in addition to testimony by Mr. Haynie, Mr. Haynie's son also testified that he overheard his father ask Tommy why he had a gun.

7. While the delinquency proceeding was pending, Tommy was released on bond and placed on home confinement. However, bond was subsequently revoked as a result of allegations that Tommy was involved in an incident that resulted in someone being shot.

8. The assault and reckless driving charges were dismissed by the trial judge.

sion on [striking a juror] under an abuse of discretion standard." *State v. Wade*, 200 W.Va. 637, 654, 490 S.E.2d 724, 741 (1997). Finally, "[w]e review the circuit court's refusal to grant a mistrial ... under an abuse of discretion standard." *State v. Stephens*, 206 W.Va. 420, 421, 525 S.E.2d 301, 302 (1999).

## III.

## DISCUSSION

### A. *Defective Delinquency Petition*

 The parties agree that the delinquency petition failed to set out venue for the conduct involving the charge of assault on a school employee and brandishing a deadly weapon.[9] The petition stated simply that the conduct occurred at Mr. Haynie's residence, but failed to indicate the county of the residence. Tommy contends that because the petition failed to set out venue, the trial court should have granted his motion to dismiss, which was made at the conclusion of the State's case-in-chief. The circuit court found, and the State contends here, that this issue was waived because it was not raised prior to trial. We agree.[10]

The issue of venue for a juvenile delinquency proceeding is addressed in part by statute. West Virginia Code § 49-5-7(a)(1) (2006) (Supp.2006) states that a juvenile delinquency "petition shall be ... filed in the circuit court in the county where the alleged ... act of delinquency occurred." *See also* W. Va. Const., art. 3, § 14 ("Trials of crimes, and misdemeanors, unless herein otherwise provided, shall be ... in the county where the alleged offence was committed[.]"); W. Va. R.Crim. P. 18 ("Except as otherwise

permitted by statute or by these rules, the prosecution shall be had in a county in which the offense was committed.") W. Va.Code § 49-5-7(a)(1) also states that "[t]he petition shall contain specific allegations of the ... place of the alleged conduct." *See also* Syl. pt. 2, *State v. Ellison*, 49 W.Va. 70, 38 S.E. 574 (1901) ("But when the indictment fails to lay the venue of the [crime], the indictment is bad on demurrer for uncertainty."); Syl. pt. 3, *State v. Hobbs*, 37 W.Va. 812, 17 S.E. 380 (1893) ("That the alleged crime was committed within the jurisdiction of the court must be shown in the indictment, and proved as charged."). Although W. Va.Code § 49-5-7(a)(1) requires that venue be alleged in a juvenile petition, the statute fails to indicate what should occur if a petition does not establish venue. Consequently, we must look to the West Virginia Rules of Criminal Procedure to resolve this issue.

 This Court has recognized that the "[r]ules of [criminal] procedural rights applicable in adult criminal proceedings are applicable with equal force in juvenile adjudicatory proceedings." *State v. Allah Jamaal W.*, 209 W.Va. 1, 3, 543 S.E.2d 282, 284 (2000) (citations omitted). *Accord State v. William T.*, 175 W.Va. 736, 738, 338 S.E.2d 215, 218 (1985). Further, it is provided by statute that,. "[a]t all adjudicatory hearings ..., all procedural rights afforded to adults in criminal proceedings shall be afforded the juvenile unless specifically provided otherwise in this chapter." W. Va.Code § 49-5-2(j) (2001) (Repl.Vol.2004). Thus, the West Virginia Rules of Criminal Procedure, to the extent that they are not inconsistent with juvenile delinquency statutes, are applicable to juvenile proceedings.[11] *See* W. Va. R.Crim. P.

---

**9.** The petition also failed to set out venue for the assault charge. Insofar as that charge was dismissed by the circuit court, we will not discuss it here. The petition established venue for the reckless driving charge.

**10.** Tommy also alleges that the circuit court should have sua sponte dismissed the petition before the trial commenced because of the defect. The State contends that there is no authority permitting a trial court to sua sponte dismiss a charging instrument on venue grounds. We agree. *See* W. Va. R.Crim. P. 12(b)(2) (requiring motion by party).

**11.** Insofar as juvenile delinquency proceedings are not criminal proceedings, the rules governing such proceedings are not subject to our constitutional rule-making authority. *See* Syl. pt. 1, *Bennett v. Warner*, 179 W.Va. 742, 372 S.E.2d 920 (1988) ("Under article eight, section three of our Constitution, the Supreme Court of Appeals shall have the power to promulgate rules for all of the courts of the State related to process, practice, and procedure, which shall have the force and effect of law."). *See also* Syl. pt. 5, *State v. Wallace*, 205 W.Va. 155, 517 S.E.2d 20 (1999) ("The West Virginia Rules of Criminal Procedure are the paramount authority controlling criminal proceedings before the circuit courts of this juris-

54(b)(3) ("Except as expressly provided within these rules, they do not apply to proceedings under Chapter 49, Article 5, Section 1, *et seq.*... so far as they are inconsistent with that statute."); Syl. pt. 1, *State v. Gary F.*, 189 W.Va. 523, 432 S.E.2d 793 (1993) ("The continuing disclosure requirement imposed by Rule 16 of the West Virginia Rules of Criminal Procedure applies to juvenile transfer proceedings in the same manner as it applies to criminal proceedings.").

This Court has noted in passing that an "indictment is defective for failing to allege the venue of the crime[.]" *State v. Pridemore*, 93 W.Va. 417, 418, 116 S.E. 756, 756 (1923). Regarding a defect in a charging instrument,[12] Rule 12(b)(2) of the West Virginia Rules of Criminal Procedure states, in relevant part,

> The following must be raised prior to trial:
>
> . . . .
>
> (2) Defenses and objections based on defects in the indictment or information (other than that it *fails to show jurisdiction in the court or to charge an offense* which objections shall be noticed by the

diction; any statutory or common-law procedural rule that conflicts with these Rules is presumptively without force or effect.").

**12.** In this opinion, we use the phrase "charging instrument" to refer to an indictment, information and juvenile petition.

**13.** Rule 12(b)(2) is patterned after its federal counterpart, Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure, which for all practical purposes is identical to our Rule 12(b)(2). Federal Rule 12(b)(3)(B) provides:

> (3) . . . . The following must be raised before trial:
>
> . . . .
>
> (B) a motion alleging a defect in the indictment or information—but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense.

**14.** Rule 12(f) is patterned after its federal counterpart, Rule 12(e), which provides:

> (e) A party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides. For good cause, the court may grant relief from the waiver.

court at any time during the pendency of the proceedings).

(Emphasis added).[13] *See also* W. Va. R.Crim. P. 34 (stating, in part, that "[t]he court on motion of a defendant shall arrest judgment if the indictment or information does not charge an offense or if the court was without jurisdiction of the offense charged"). It is further provided by Rule 12(f) that "[f]ailure by a party to raise defenses or objections ... which must be made prior to trial, ... may constitute waiver thereof, but the court for cause shown should grant relief from the waiver." [14]

█ Reading these provisions together, we now hold that, for the purposes of Rule 12(b)(2) and Rule 12(f) of the West Virginia Rules of Criminal Procedure, if a defect in a charging instrument does not involve jurisdiction or result in a failure to charge an offense, a defendant must raise the issue prior to trial or the defect will be deemed waived absent a showing of good cause for failing to timely raise the issue.[15]

█ Here, Tommy concedes that, prior to trial, he did not raise the issue of the petition

**15.** In Syllabus point one of *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996), this Court held:

> Rule 12(b)(2) of the West Virginia Rules of Criminal Procedure requires that a defendant must raise any objection to an indictment prior to trial. *Although a challenge to a defective indictment is never waived*, this Court literally will construe an indictment in favor of validity where a defendant fails timely to challenge its sufficiency. Without objection, the indictment should be upheld unless it is so defective that it does not, by any reasonable construction, charge an offense under West Virginia law or for which the defendant was convicted.

(Emphasis added). The pronouncement in *Miller*, that a defect in an indictment is never waived, is limited to the context of a charging instrument that fails to show jurisdiction or charge an offense. In fact, *Miller* noted the limitations of Rule 12(b)(2) by pointing out that "[t]he issue raised in this case ... is not a jurisdictional defect and should have been raised prior to trial." *Miller*, 197 W.Va. at 598 n. 13, 476 S.E.2d at 545 n. 13 (citation omitted). The decision in *Miller* appears to have recast the defendant's argument and concluded that "the objection now made is reviewable only for the failure to allege an offense for which the defendant was convicted[.]" *Miller*, 197 W.Va. at 598–99, 476 S.E.2d at 545–46.

being defective on venue grounds. Thus, in order for the venue issue not to be deemed waived, we must find that (1) venue is jurisdictional, (2) the absence of a statement of venue means an offense was not charged, or (3) good cause was shown for failing to timely raise the issue.[16] *See State v. Eddie Tosh K.*, 194 W.Va. 354, 357 n. 4, 460 S.E.2d 489, 492 n. 4 (1995) ("[Rule] 12(b)(2) states that the defenses and objections based upon defects in an indictment or information must be raised prior to trial. The same reasoning should be applicable to a petition filed in a juvenile proceeding."). We will address each nonwaiver issue separately.

**1. Venue is not jurisdictional.** It has been recognized "that jurisdictional errors are not waived, because they affect the basic authority of a court to hear and decide a case." *United States v. Calderon*, 243 F.3d 587, 590 (2nd Cir.2001). Thus, if venue is jurisdictional, it may be raised at any time, even on appeal. *See* Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure*, p. I–687 (1993) ("[A] jurisdictional defect cannot be waived[.]"). In *State v. Dennis*, 216 W.Va. 331, 607 S.E.2d 437 (2004), this Court made the following distinction between venue and jurisdiction:

> Although at times related, [venue and jurisdiction] are hardly synonymous. In the context of a criminal case, jurisdiction involves the inherent power of [a] court to decide a criminal case, whereas venue relates to the particular county or city in which a court with jurisdiction may hear and determine a case. Thus, any court authorized by the [state] Constitution, or a statute enacted pursuant thereto, to hear and determine a case involving a criminal act has jurisdiction thereof.

*Dennis*, 216 W.Va. at 342, 607 S.E.2d at 448 (internal quotations and citations omitted). *See Willis v. O'Brien*, 151 W.Va. 628, 630–31, 153 S.E.2d 178, 180 (1967) ("Jurisdiction is a constitutional endowment of power to hear and determine a cause. Thus, any court authorized by the Constitution, or a statute enacted pursuant thereto, to hear and determine a case involving a criminal act has jurisdiction thereof. Venue, on the other hand, is merely the place of trial. It designates the particular county in which a court having jurisdiction may properly hear and determine the case.").[17]

In the case of *State v. Haase*, 446 N.W.2d 62 (S.D.1989), the Supreme Court of South Dakota addressed the distinction between venue and jurisdiction as follows:

> Jurisdiction is made up of two components, i.e., (a) personal jurisdiction and (b) subject-matter jurisdiction.... A court must have both personal and subject-matter jurisdiction before it may act on a criminal charge.... A court acquires personal jurisdiction by the accused's presence before the court, irrespective of the events procuring his presence.... Subject-matter jurisdiction entails the power of a court to hear a case, determine the facts, apply the law and set a penalty.... Subject-matter jurisdiction cannot be conferred by agreement, consent, or waiver.... A judgment rendered by a court without jurisdiction to pronounce it is wholly void and without any force or effect whatever.... Jurisdiction may be challenged at any time during the pendency of the proceedings and for the first time on appeal....
>
> Venue is another matter. It refers to the county in which the prosecution is to be brought.... Generally, this will be the

---

16. Even though venue has constitutional implications, "the standard for finding a waiver of venue is less rigorous than that for finding a waiver of the rights to trial by jury, to confront one's accusers and to be free from self-incrimination." *United States v. Perez*, 280 F.3d 318, 328 (3rd Cir.2002).

17. In the context of civil litigation, we have held that "[v]enue is not a jurisdictional question in the strict sense of the word, but rather, is a matter of personal privilege which may be

waived[.]" Syl. pt. 2, *Hansbarger v. Cook*, 177 W.Va. 152, 351 S.E.2d 65 (1986). *See also Hinerman v. Daily Gazette Co., Inc.*, 188 W.Va. 157, 179, 423 S.E.2d 560, 582 (1992) ("Although lack of subject matter jurisdiction cannot be waived, lack of proper venue certainly can."); *State ex rel. Kenamond v. Warmuth*, 179 W.Va. 230, 233, 366 S.E.2d 738, 741 (1988) ("Unlike jurisdiction ..., venue may be conferred by consent or waiver; it is not a jurisdictional question in the strict sense of the word.").

county in which the offense is alleged to have been committed.... However, unlike jurisdiction which cannot be conferred by waiver, ... the right to venue of a prosecution in the county where the offense was committed can be waived by a defendant and the prosecution may proceed in another county.... Were the rule otherwise, a change in venue would not be possible.... In summation, subject matter jurisdiction cannot be waived, but venue can be waived.

... To be sufficient, a venue allegation must appear in an indictment or information that the offense charged was committed in the county in which the prosecution is instituted.... Thus, if an indictment or information fails to contain such an allegation, the defect must be raised prior to trial or is deemed waived....

*Haase,* 446 N.W.2d at 64–65 (internal quotations and citations omitted).

In the context of criminal litigation, federal courts have taken the position that "[v]enue is not jurisdictional[.]" *United States v. Calderon,* 243 F.3d 587, 590 (2nd Cir.2001). *See also United States v. Evans,* 62 F.3d 1233, 1236 (9th Cir.1995) ("Strictly speaking, this is a matter of venue, not jurisdiction, because this constitutional right can be waived."); *Wilkett v. United States,* 655 F.2d 1007, 1011 (10th Cir.1981) ("Venue in federal criminal cases ... is not jurisdictional."); *United States v. Walden,* 464 F.2d 1015, 1016 n. 1 (4th Cir.1972) ("[I]mproper venue is not a jurisdictional defect[.]"). Consequently, all federal appellate courts hold that the issue of venue is waived if not raised prior to trial. *See, e.g., United States v. Collins,* 372 F.3d 629, 633 (4th Cir.2004); *United States v. Perez,* 280 F.3d 318, 328 (3rd Cir.2002); *United States v. Delgado–Nunez,* 295 F.3d 494, 496 (5th Cir.2002); *United States v. Johnson,* 297 F.3d 845, 861 (9th Cir.2002); *United States v. Roberts,* 308 F.3d 1147, 1151–52 (11th Cir.2002); *United States v. LiCausi,* 167 F.3d 36, 44 (1st Cir.1999); *United States v. Cordova,* 157 F.3d 587, 597 n. 3 (8th Cir.1998); *United States v. Miller,* 111 F.3d 747, 750 (10th Cir.1997); *United States v. Brandon,* 50 F.3d 464, 469 (7th Cir.1995); *United States v. Wilson,* 26 F.3d 142, 151 (D.C.Cir.1994); *United States v. Khan,* 821 F.2d 90, 93 (2nd Cir.1987); *United States v. Burkhart,* 501 F.2d 993, 996 (6th Cir.1974).

■ Consequently, we hold that, for the purposes of Rule 12(b)(2) of the West Virginia Rules of Criminal Procedure, venue is not jurisdictional; therefore, a defect in a charging instrument involving venue is subject to waiver if not asserted prior to trial. *See Dean v. State,* 414 So.2d 1096, 1099 (Fla.Dist. Ct.App.1982) ("[I]nsufficient allegations of venue in an information are subject to being waived[.]"). Insofar as venue is not jurisdictional, Tommy cannot rely upon the jurisdictional exception to waiver contained in Rule 12(b)(2).

■ **2. The absence of a statement of venue does not mean that an offense was not charged.** Under Rule 12(b)(2), if a charging instrument fails to set out an offense for which a defendant is prosecuted, such a defect may be raised at any time. *See* Cleckley, *Criminal Procedure,* p. I–687 ("Rule 12(b)(2) properly interpreted means that an objection to an information or indictment on the ground that it fails to charge an offense may be raised for the first time on appeal."). Tommy takes the position that failure to set out venue in the petition was tantamount to failing to state an offense. We disagree.

In *State v. Burton,* this Court stated "that venue is not a fact which relates to the guilt or innocence of the accused. It is therefore not a substantive element of the crime[.]" 163 W.Va. 40, 59–60, 254 S.E.2d 129, 141 (1979). *See also United States v. Zidell,* 323 F.3d 412, 421 (6th Cir.2003) ("[V]enue is not properly considered a true 'element' of a criminal offense."); *United States v. Carreon–Palacio,* 267 F.3d 381, 391 (5th Cir. 2001) ("[V]enue differs in substance from statutory offense elements."); *Wilkett v. United States,* 655 F.2d 1007, 1011 (10th Cir.1981) ("Venue is wholly neutral; it is a question of procedure, more than anything else, and it does not either prove or disprove the guilt of the accused."). In finding that venue was not a substantive element of an offense, *Burton* went on to hold that "[t]he State in a criminal case may prove the venue

of the crime by a preponderance of the evidence, and is not required to prove the same beyond a reasonable doubt." Syl. pt. 5, *Burton*, 163 W.Va. 40, 254 S.E.2d 129. Federal courts also hold that "when proving a non-essential element of a crime, like venue, the government need only meet the preponderance of evidence standard." *United States v. Stickle*, 454 F.3d 1265, 1273 (11th Cir.2006). *Accord United States v. Ebersole*, 411 F.3d 517, 524 (4th Cir.2005); *United States v. Strain*, 396 F.3d 689, 692 n. 3 (5th Cir.2005); *United States v. Morgan*, 393 F.3d 192, 195 (D.C.Cir.2004); *United States v. Perez*, 280 F.3d 318, 330 (3rd Cir.2002); *United States v. Matthews*, 168 F.3d 1234, 1246 (11th Cir. 1999); *United States v. Josleyn*, 99 F.3d 1182, 1190 (1st Cir.1996); *United States v. Rosa*, 17 F.3d 1531, 1541 (2nd Cir.1994); *United States v. Delgado*, 914 F.2d 1062, 1064 (8th Cir.1990); *United States v. Rodgers*, 755 F.2d 533, 549 n. 19 (7th Cir.1985); *United States v. Rinke*, 778 F.2d 581, 584 (10th Cir.1985); *United States v. Powell*, 498 F.2d 890, 891 (9th Cir.1974); *United States v. Charlton*, 372 F.2d 663, 665 (6th Cir.1967).

■ The above authorities support and we accordingly hold that, for the purposes of Rule 12(b)(2) of the West Virginia Rules of Criminal Procedure, venue is not an essential element of an offense; therefore, a defect in a charging instrument involving venue is subject to waiver if not asserted prior to trial. This does not, however, relieve the State of its burden of proving venue at trial in every case by a preponderance of the evidence. *See United States v. Powell*, 498 F.2d 890, 891 (9th Cir.1974) ("[V]enue, since it may be

waived, is not an essential fact constituting the offense charged."). In the instant ·proceeding, the absence of a statement of venue in several of the counts in the petition did not mean that the State failed to charge an offense.[18] Consequently, Tommy cannot rely upon the offense charged exception to waiver contained in Rule 12(b)(2).[19]

■ **3. Good cause was not shown.** Rule 12(b)(2) grants trial courts discretion, upon a showing of good cause, to allow a defendant to raise an otherwise untimely challenge to a charging instrument. Tommy failed to present the trial court with any reason for failing to timely move to dismiss the petition. Indeed, Tommy has failed to proffer in this appeal any reason for failing to timely challenge the petition on the issue of venue. Therefore, the good cause exception of Rule 12(b)(2) has no application in this case.[20]

In sum, "[a]s to the first point on appeal we [conclude] that [Tommy] may not now challenge his [adjudication and disposition] on the grounds that [the petition] fails to allege venue because he failed to raise the issue by pre-trial motion." *Tucker v. State*, 417 So.2d 1006, 1009 (Fla.Dist.Ct.App.1982).

### B. Failure of the Trial Court to Exclude Two Jurors for Cause

■ The next issue raised by Tommy is that the trial court committed error in failing to exclude two jurors for cause. During voir dire of the jury panel, it was learned that one juror, Sandra Jones, was an employee of the Clay County Board of Education and that

---

**18.** Other than the nonsubstantive issue of venue, Tommy makes no argument that the petition failed to set out the substantive elements of each of the charges in the petition.

**19.** It should be noted that the State established venue during the trial as follows:

[Prosecutor]: Mr. [Haynie], one more preliminary question, where do you live?
[Mr. Haynie]: On ... on what's called Maysel Hill.
[Prosecutor]: Is that in Clay County?
[Mr. Haynie]: Yes, sir.

**20.** The only recognized "good cause" for failing to timely raise a venue defect in a charging instrument is if the instrument "properly alleges venue, but the proof at trial fails to support the

venue allegation[.]" *United States v. Collins*, 372 F.3d 629, 633 (4th Cir.2004). That is, when a charging instrument "alleges venue on its face without an obvious defect, 'the defendant has no notice that a facially proper allegation of venue is in fact defective, and thus there can be no waiver until the close of the government's case.' " *United States v. Perez*, 280 F.3d 318, 328 (3rd Cir. 2002) (quoting *United States v. Sandini*, 803 F.2d 123, 127 (3rd Cir.1986)). *Accord United States v. Novak*, 443 F.3d 150, 161 (2nd Cir.2006); *United States v. Greer*, 440 F.3d 1267, 1271 (11th Cir. 2006); *United States v. Grenoble*, 413 F.3d 569, 573 (6th Cir.2005); *United States v. Delgado–Nunez*, 295 F.3d 494, 497 (5th Cir.2002); *United States v. Brown*, 739 F.2d 1136, 1148 (7th Cir. 1984); *United States v. Black Cloud*, 590 F.2d 270, 272 (8th Cir.1979).

she worked with the complaining witness, Mr. Haynie. Voir dire also evidenced that a second juror, Barbara Sizemore, was the mother of a former deputy sheriff of Clay County.[21] Tommy contends that both jurors should have been struck for cause.

The problem with Tommy's argument is that the record reveals that the trial court was never asked to strike either juror for cause. At the conclusion of voir dire the following exchange occurred:

Judge: Would counsel approach? Any motions for cause? Mr. Grindo? Mr. Karickhoff?

Karickhoff: (inaudible)...

Judge: Ok, I assume the jury is qualified. And how long does [sic] the parties need to strike the jury?

Tommy contends that because of the inaudible portion of the above transcript, it is unclear whether his counsel asked the court to remove the two jurors for cause.[22] We do not read the above passage so narrowly. The last response of the trial court clearly reveals that no objection for cause was made.

■ "The proper time to make a challenge for cause is before the jur[y] is sworn to try the issue." Cleckley, *Criminal Procedure*, p. I–894. We have held that "[t]he right of challenge, where it exists must be exercised [timely], and if not so exercised, the objection is unavailing to set aside the verdict." *State v. Hayes*, 109 W.Va. 296, 303, 153 S.E. 496, 499 (1930) (internal quotations and citation omitted). *See also* Syl. pt. 4, *State v. Cooper*, 74 W.Va. 472, 82 S.E. 358 (1914) ("One accused of a felony waives his right of challenge, and will not, after verdict, be heard to complain, if, with knowledge of the disqualification, he remains silent or refuses, when afforded an opportunity, to exercise his right thereto."). In other words, and we so hold, when a defendant has knowledge of grounds or reason for a challenge for cause, but fails to challenge a prospective

juror for cause or fails to timely assert such a challenge prior to the jury being sworn, the defendant may not raise the issue of a trial court's failure to strike the juror for cause on direct appeal.[23] The reason for the waiver rule was addressed by a Missouri Court of Appeals in *State v. Marlow*, 888 S.W.2d 417 (Mo.Ct.App.1994), as follows:

When the defendant is aware of facts which would sustain a challenge for cause, he must present his challenge during the voir dire examination or prior to the swearing of the jury, otherwise, the point is waived.... This requirement of contemporaneous objections to the venireperson's qualifications serves to minimize the incentive to sandbag in the hope of acquittal and, if unsuccessful, mount a post-conviction attack on the jury selection process....

*Marlow*, 888 S.W.2d at 420 (internal quotations and citations omitted). *See also Daniels v. State*, 49 Ala.App. 654, 275 So.2d 169, 172 (1973) ("[F]ailure of the appellants to raise the question of the disqualification of the juror ... before trial by advising the court or making some appropriate objection or motion to invoke a ruling by the court, was a waiver."); *People v. Henry*, 254 Ill. App.3d 899, 194 Ill.Dec. 109, 627 N.E.2d 225, 227–28 (1993) ("[T]he defendant did not ask the court to disqualify [the juror].... Accordingly, he waived his statutory right to such a challenge."); *Langston v. State*, 791 So.2d 273, 281 (Miss.Ct.App.2001) ("If a party fails to object to a juror before the jury is empaneled, that party waives any right to complain of the jury's composition at a later time."); Syl. pt. 2, *State v. Harris*, 184 Neb. 301, 167 N.W.2d 386 (1969) ("A defendant who fails to challenge jurors for disqualification and passes the jurors for cause waives his right to object to their selection and cannot later object after receiving an unfavorable verdict."); *Childress v. State*, 1 P.3d

---

**21.** It appears that, at the time of the delinquency proceeding, Ms. Sizemore's son was employed as a police officer for the town of Richmond, and that he was a complaining witness against Tommy in another juvenile proceeding.

**22.** Counsel for Tommy in this appeal was not counsel below.

**23.** *See* Syl. pt. 4, in part, *Proudfoot v. Dan's Marine Serv., Inc.*, 210 W.Va. 498, 558 S.E.2d 298 (2001) ("In order to receive a new trial, a party challenging a verdict based on the presence of a juror disqualified ... must show that a timely objection was made[.]").

1006, 1016 (Okla.Crim.App.2000) ("[A]ny objection to the trial court's refusal to remove prospective juror ... for cause is waived, because defense counsel did not renew his challenge for cause prior to passing the jury."); *Gaona v. State,* 733 S.W.2d 611, 618 (Tex.App.1987) ("[A]ppellant waived any error by failing to inquire about the juror's qualifications during voir dire examination and by failing to assert his challenge at that time."); *In re Nash,* 158 Vt. 458, 614 A.2d 367, 372 (1991) ("The right to challenge a juror is waived by a failure to object before the jury is impaneled if the basis for the objection is known or might, with reasonable diligence, have been discovered during voir dire."); *State v. Brunette,* 220 Wis.2d 431, 583 N.W.2d 174, 179 (1998) ("[A] defendant waives an objection to a juror's bias if no motion is made to the trial court to remove the juror for cause."); *Munoz v. State,* 849 P.2d 1299, 1302 (Wyo.1993) ("Appellant waived his claim to reversible error with respect to his challenges [for cause] ... by passing the jury panel for cause.").

In the instant case, "[b]y failing to challenge [for cause] when requested, [Tommy] waived his right thereto." *State v. Cooper,* 74 W.Va. 472, 474–75, 82 S.E. 358, 359 (1914). Therefore, we need not determine whether the jurors should have been removed for cause.

### C. Failure of the Trial Court to Grant a Mistrial

■ The last issue raised by Tommy is that he is entitled to a new proceeding because jurors may have seen him wearing shackles and institutional clothing.[24] In support of this assignment of error, Tommy cites to two decisions by the United States Supreme Court addressing the issue of shackling and institutional clothing, *Deck v. Missouri,* 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005), and *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126

(1976). This assignment of error has no merit on its face.

Neither *Deck* nor *Estelle* is applicable to the facts of this case. In *Deck,* the Supreme Court indicated that, during the *sentencing phase* of a capital prosecution, a defendant should not, without justification, be shackled while in the courtroom. In *Estelle,* the Supreme Court indicated that a defendant being tried by a jury should not be required to wear prison garb while in the courtroom. Neither *Deck* nor *Estelle,* or any court in the country for that matter, prohibits transporting a prisoner to a courthouse wearing prison garb or shackles. Any rule to the contrary would be ludicrous.

In the instant proceeding, Tommy concedes that he was not dressed in institutional clothing while in the courtroom, nor was he wearing any physical restraints while in the courtroom. Further, Tommy does not state that a juror saw him while he was in the courthouse wearing institutional clothing and shackled. Tommy would have this Court grant him a new delinquency proceeding *based upon the mere possibility that a juror might have seen him* in the courthouse wearing institutional clothing and shackled. We decline to do so on such speculative grounds.

### IV.

### CONCLUSION

In view of the foregoing, the judgment of the circuit court is affirmed.

Affirmed.

---

**24.** Tommy's brief states that the trial court issued an order requiring him to be transported to the court wearing civilian clothing. Tommy's brief is only partly correct. The trial court's order specifically indicated that Tommy could be brought to the "courthouse" wearing shackles and institutional clothing, but that he had to be brought into the "courtroom" wearing civilian clothing and free of physical restraints.